SCR CIV FORM 1-A
## Notice and Acknowledgment for Service by Mail
### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

__JOSEPH SLOVINEC__
Plaintiff

V.

Civil Action Number __2006 CA 003826__

__AMERICAN UNIVERSITY__
Defendant

## NOTICE

To: Name __VICE PRESIDENT - LEGAL COUNSEL MARY KENNARD__

Address __3201 New Mexico Av N.W.__
__Washington DC 20016__

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be taken against you for the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date) __May 19, 2006__.

__Hatfield__                                __May 19, 2006__
Signature                                   Date of Signature

### Acknowledgment of Receipt of Summons, Complaint and Initial Order

I received a copy of the summons, complaint and initial order in the above captioned matter at

(address) _____

_____     _____     _____
Signature                          Relationship to Defendant/Authority   Date of Signature
                                   To Receive Service of Process

Form CV(6)-1590/Mar 97

EXHIBIT A



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

JOSEPH SLOVINEC  
Vs.  
AMERICAN UNIVERSITY

C.A. No.  2006 CA 003812 B

### INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge NATALIA COMBS GREENE  
Date: May 17, 2006  
Initial Conference: 9:00 am, Friday, August 25, 2006  
Location: Courtroom 312  
500 Indiana Avenue N.W.  
WASHINGTON, DC 20001

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

JOSEPH SLAVINEC
425 2ND ST, N.W.
WASHINGTON, DC 20001
Plaintiff

vs.

AMERICAN UNIVERSITY
OF 4400 MASS. AV, N.W.
SERVE: VICE PRESIDENT AND
GENERAL COUNSEL MARY KENNARD
3201 NEW MEXICO AV, N.W.
WASHINGTON, DC 20016
Defendant

0003812-06

Civil Action No. _____

COURT IS ASKED TO
SERVE ONE.
U.S. MARSHAL AGENT
(SITED WITH EEOC CASE)

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either PLAINTIFF personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Joseph Slavinec_
Name of Plaintiff's Attorney
JOSEPH SLAVINEC

Address 425 2ND ST, N.W. WASHINGTON, DC
20001  202-393-1919
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date 05-16-06

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

PLAINTIFF WILL NOT PAY TAXIS IT
NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM. AMERICAN U.
UNLESS WE ENROLL ON TAXIS DC POLICE, U.S. MARSHAL

CV(6)-458/May 03

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JOSEPH SLOVINEC
425 2ND ST, NW
WASHINGTON, DC

**Plaintiff**

vs.

AMERICAN UNIVERSITY
MARY KENNARD, VICE PRESIDENT AND
GENERAL COUNSEL, 3201 NEW MEXICO AV, NW
WASHINGTON, DC 20016

**Defendants**

Civil Action No. 0003812-06

## COMPLAINT

FALSE ACCUSATION OF DISRUPTIVE ACTIVITY BEFORE BARRING POLITE VISITS WITH PERMISSION, MAY 7, 2005, NOT TOLD TO LEAVE

1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.

D.C. CODE 22-3302

SEE CASE BOOK UNDER D.C. CODE 22-3302 (CASES) SAME FEDERAL IN LIBRARY OF CONGRESS: ARREST THREATS MADE FOR DEMONSTRATIONS, REFUSAL TO LEAVE AFTER VERBAL WARNING, BURGLARY: PLAINTIFF DID NOT COMMIT THESE OR ANY OF THESE

Wherefore, Plaintiff demands judgment against Defendant in the sum of $ 26,000.00 with interest and costs.

(COMPLAINT CON'T) CAN ADJUST AMERICAN U. ACCUSED VISITS - IF DESIRING GRADES MUST BE RECORDED IN GET TUITION AFTER CANCELLATION OF CLASS

Phone: 202-393-1909

DISTRICT OF COLUMBIA, ss

JOSEPH SLOVINEC, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all set-off and just grounds of defense.

_____ (Plaintiff / Agent)

Subscribed and sworn to before me this 16TH day of _____ 2006.

_____ (Notary Public/Deputy Clerk)

FORM CV-1013/ Nov. 00

IN THE DISTRICT OF COLUMBIA SUPERIOR COURT, WASHINGTON, D.C.
CIVIL DIVISION – CIVIL ACTIONS

Joseph Slovinec,
   Plaintiff,
      Vs.
American University,
   Defendant (for actions of Public Safety)
Note: Please serve complaint to Vice President and General Counsel Mary Kennard, 3201 New Mexico Av., N.W., Washington, D.C.   appointed official on website: Pamela Deese's Governance Committee memo, Board of Trustees, Dec. 5, 2005

COMPLAINT OF DEFAMATION AND DAMAGE TO POTENTIAL BUSINESS REPUTATION IN BARRING ORDER OF MAY 17, 2005 OF AMERICAN UNIVERSITY'S PUBLIC SAFETY

A. Nature of the Action

1. Plaintiff Joseph Slovinec alleges he was falsely accused of "disruptive activities" and endangering the American University campus in a May 17, 2005, barring order from American University's campus which was signed by Michael McNair and a Maurice Carter or Carten of American University's Public Safety Office: defamation occurred during and after distribution of this order which threatened arrest of Plaintiff under D.C. Code 22-3302 without cause, and even with a proposed end to barring on May 17, 2006, in order text, damage to Plaintiff's potential business reputation and ability to form contracts will continue since Plaintiff has repeatedly refused to sign requests for waiver of American University from liability in background checks and investigations for employment: damages of $26,000 less bills to American U. of about $11,000 if court desires payment == $15,000 total award to Plaintiff since American U. is expected to damage Plaintiff's ability to earn money with reports of barring order which was already circulated to campus offices. Leave of court is asked to use a single-space format for remainder of this pleading since Plaintiff has limited

ability to type at Community for Creative Nonviolence homeless shelter where he resides.

**B. Jurisdiction and venue**

2.

Jurisdiction is conferred on the D.C. Superior Court because McNair cited D.C. Code 22-3302 in the barring order and threatened to ask D.C. police to arrest Plaintiff. There are two cases in federal court: 06-0455 is limited to U.S. Equal Employment Opportunity Commission issues of age discrimination and Maurice Carter or Carten's racial discrimination against Plaintiff for barring him for distributing a letter of complaint to U.S. Secretary of Education Margaret Spellings which included a complaint about black Edward Abankwa: it includes McNair's communication with Brenda Harner at American U. Human Resources where he had forbidden her from interviewing J. Slovinec for any of 18 American U. jobs which are in the age discrimination complaint: all defamation charges which are not limited to age and race and were general damage to opinions of American U. students and staff, D.C. police, and potential employers, the D.C. court is asked to review issues within concurrent jurisdiction in U.S. Court of Appeals Case 05-7090 Slovinec v. American U. which only asks for relief of tuition remission and no damages And damages in this case of $26,000 resulted from the aggravation Plaintiff suffers where U.S. Court of Appeals told him he has no other choice for relief to give a writ of certiorari for review by July 13, 2006. The D.C. Superior Court is asked to respect American U.'s rights against double jeopardy in 5th Amendment to U.S. Constitution and to review complicated issues of concurrent jurisdiction according to principles of *Colorado River Water Conservation District et al. v. United States*, 424 U.S. 800 (1976) which are stated in similar form in *U.S. ex. Rel. Hartigan v. Palumbo Bros.*, 797 F.Supp. 624 (N.D. Ill. 1992). The Colorado river principles include: order in which jurisdiction was obtained (Judge Urbina had federal jurisdiction first in June 2005); relative progress of federal and state procedures (Plaintiff feels federal court gave virtually no hearing to his concerns and there is a still a dispute on whether Defendant was served); and presence of concurrent jurisdiction and source of governing law: McNair cited D.C. Code 22-3302 on arrest threat; Plaintiff alleges barring was actually done for unpaid bill and spiteful threat to job search, perhaps from Republican or corrupt interests. Urbina said if defamation was an issue, it was not a federal issue: a common view on D.C. Circuit which has few cited opinions and objectionable oral motions to dismiss Plaintiff's lawsuit against exclusion from Food Stamp Employment Training at UDC/Van Ness D.C. Superior Court 2006 (SC1) 0617 WHERE D.C. GOVERNMENT CHANGED STAND TO PLAN ADMISSION OF PLAINTIFF AFTER THEY DISCOVERED A FEDERAL LAW DOES NOT EXEMPT OR EXCLUDE HIM AS A HOMELESS SHELTER RESIDENT WHO IS NOT A SUBSTANCE ABUSER. Plaintiff is unsure of "adequacy of state court action to protect personal rights": he files this now as a test of D.C. judges before a near-certain certiorari request to U.S. Supreme Court.

Plaintiff maintains the source of governing law for defamation can include federal court rulings which, especially in the Chicago area, support his view defamation is a federal issue, Board of Regents v. Roth, 408 U.S. 564 and Perry v. F.B.I. 781 F2d 1294 (7th Cir. 1986). The U.S. Court of Appeals ruling merely tried to claim Plaintiff was not entitled to have the relief granted, with a minimum amount of effort and error in not correcting an omission of Urbina and ordering enforcement of a file inspection according to the Family Educational Rights and Privacy Act, one of 3 main points with above defamation and linked requested remedy of allowing Plaintiff to complete program with a tuition waiver of 2 semesters: WHICH CAN ONLY BE REOPENED FOR TALKS IF BOTH AMERICAN U. AND PLAINTIFF AGREE, AND IF THAT OCCURS, THIS D.C. SUPERIOR COURT SUIT COULD BE DROPPED. However, this court is reminded, there was also a total lack of progress on the U.S. Court of Appeals level after Notice of Appeal of July 14, 2005 where Plaintiff wrote: "Judge Urbina irresponsibly ignored: defamation charges (Mc Nair made) against Plaintiff one day after he applied on American University's computer for a Federal Bureau of Investigation job, a liberty interest under 14th Amendment to Constitution and employability issue, and Mr. McNair's distortion of purposes when Plaintiff politely was delivering legally protected complaints on institutional grievance to U.S. Department of Education", food stamp-related issues, and "financial aid records which Plaintiff can legally inspect".

## LIST OF D.C. OFFICIAL CODE BOOK CASES AFTER D.C. CODE 22-3302

3.      These support Plaintiff J. Slovinec's view the arrest threat was excessive and wrong since Plaintiff J. Slovinec did not commit any offense which is listed like demonstrations, burglary, or illegal activity like lying down on property: Washington, D.C. Police Chief Ramsey did not seem to perceive this as major, urgent issue when he still has not responded to Joseph Slovinec's letter to Chief Ramsey on December 20, 2005 in U.S. Court of Appeals Case 05-7090, Slovinec v. American University: "I believe the real reason for the barring order was my nonpayment of fees although McNair did not state it. I felt American U. was moderately deceptive with an e-mail of a claimed $14,000 financial aid award in February 2005 and I could not pay the bill with no financial aid. My entry onto the premises on May 17, 2005, was not unlawful although Mc Nair implied it was. Unlawful entry means (see D.C. Official Code case list after 22-3302) means 'invades''against will of occupant' *Shelton v. U.S.*, 505 A 2d 767 (1986) and *Moore v. U.S.*, 136 A2d 868 and there is 'unlawful entry on property after warning to keep off premises.' *Smith v. U.S.* 281 A2d 438 (1971) which McNair did not give any time before the barring order May 17, 2005. I had and still have a pending offer to complete a Graduate Certificate Certificate in Peacebuilding if I pay money by Summer 2008 so I visited with "good purpose" and "bona fide belief of right to enter", *Mc Gloin v. U.S.* 232 A2d 90

3

C. Parties

J. Slovinec, American U. Public Safety Office: Michael McNair and Maurice Carter or Carten, and list of employers at Nov. 2005 Dept. of Employment Services

D. Facts supporting Plaintiff's claim

McNair only started to question Plaintiff's activities on May 17, 2005 visit and Plaintiff gives a full list of American U. staff he visited:
Mr. Kumar of Mediation Services who desires privacy, although he indicated he could not do anything after semester ended since he felt his role would have been to ease tensions if Dr. Fisher's group had friction in turning in work;
April Hornung of Human Resources told Plaintiff Slovinec he had right to file a discrimination complaint, and she took letter and told Plaintiff to call Brenda: Brenda seemed too busy to talk and nothing else was said.
Carrie Tribulec of the International Peace and Conflict Resolution program took letter without comment;
A Financial Aid receptionist took it without comment: although there were tensions with Ingrid Valentine which later worsened and difficulty with Michelle Silberberg's talks with Illinois loan officials, J. Slovinec did not see either Ingrid or Michelle on May 17 at all.    Their refusal to provide indicated $14,000 loan with an ineffective jobs placement program later caused zero in J. Slovinec's savings in Sept. 2005 after he spent $8700 he had in Feb. 2005 on living expenses.
Amanda Taylor of Admission was not in and was accused of violating FERPA in federal court: J. Slovinec actually attended American U. and could see file in rule, she refused it.
Darryl Cook of Financial Accounts politely told Plaintiff his unpaid Spring Tuition 2005 bill could be paid with somewhat late loan or by remission of tuition with American University's permission.
At first, it might have seemed Urbina was right or not wrong in implying it was enough for McNair to review barring order, and McNair allowed Plaintiff to visit American U. campus once in June 2005 to give Lt. Spencer food stamp form to deliver to Ingrid Valentine. PLAINTIFF HAS EARNED LESS THAN $600 SINCE APRIL 2005 AND AS MONTHS WENT ON, IT BECAME OBVIOUS THIS WAS LINKED TO PLAINTIFF'S REFUSAL TO SIGN RELEASES OF AMERICAN UNIVERSITY FROM LIABILITY FOR STATEMENTS IN BACKGROUND CHECKS AND INVESTIGATIONS WHICH COULD EASILY HAVE INCLUDED MCNAIR'S BARRING ORDER of Plaintiff as undesirable with "disruptive activities" and implied Plaintiff was endangering campus with similarity to criminal, burglars which Public Safety expels or weeds out.
There was a job fair in a hotel near 9th and K St., N.W., in November 2005 which was sponsored by D.C. Dept. of Employment Services and these companies were examples of companies which in nearly every case asked J. Slovinec to fill out a background check or investigation form which released American U. from liability for any statements, and J. Slovinec refused: **Filene's Basement, Old Navy, Joseph A. Bank, Toys'R'Us, and Pier One. Joseph Slovinec was never hired for a full-time job since he left American U. in April 2005 and this is a reason for a tort of lost wages of $26,000. p. 4**

4

# MCNAIR'S USE OF DEFENSE MECHANISM OF PROJECTION TACTICS

McNair actually wanted to use the term disruptive activity as a type of use of Freud's defense mechanism of projection (changing minds.org): when J. Slovinec accused American U. of disrupting his career plans, McNair retaliated by accusing J. Slovinec of being the disrupter or organizational troublemaker, not management. McNair accused Slovinec of "disruptive activity at various university offices" which was a response to J. Slovinec's use of the term disruptive in the Spellings letter; "my future work or schooling plans are disrupted with uncertain references from Dr. Fisher" who seemed to link displeasure on giving work references (claims without his permission in Sept. 2005, differed from earlier talk) due to unpaid bill, yet I cannot make collection payments with little or no income and a catalog section which promised J. Slovinec a Financial Aid Appeal if aid denial cause " disruption to students' ability.. to.. complete . work. When one reviews J. Slovinec's activities of the day, it is clear J. Slovinec's main objectionable activity was distribution of the Spellings letter. One needs to carefully read its contents to understand Mc Nair's motivation, and a reading makes McNair appear more malicious. Spellings' office said J. Slovinec had the right to file what her phone call person said was an institutional grievance if he was dissatisfied with American U.'s policies on financial aid. IF INDEED, J. SLOVINEC HAD LEGAL RIGHT TO DISTRIBUTE LETTER, COURT CASES SIDE WITH J. SLOVINEC'S VIEWS BARRING WAS WRONG AND NOT MCNAIR'S VIEW: The U.S. Supreme Court in *Cincinnati v. Discovery*, 507 U.S. 410 (1990) says First Amendment protects "lawful activity" which is a "reasonable fit" like demonstration about foreign policy. McNair like the Boston City Council lacked a specific accusation of evidence Appellant (J. Slovinec) was interfering with "orderly control of business" a cause for a court order to end barring of television reporter. *Westinghouse Broadcasting v. Dukakis*, 409 F. Supp. 895. J. Slovinec made these true statements in the Spellings letter:

"The Maryland Dept. of Health and Human Services says I cannot use their emergency shelters: they are only for the mentally ill and substance abusers." Maryland's services for evicted American U. students are horrible, and McNair seeks to aid Julie Weber and Governor Ehrlich's staff in a coverup.

"American U. was not cooperative in providing any of the financial aid Dean Goodman seemed to indicate in a December 2004 letter: campus jobs..or private loans"

Criticism of Dr. Fisher who was apathetic on foundations and "refused to grade my term paper on the Arab League" which is causing accusations of his academic repression of J. Slovinec's criticism of Bush for invading Iraq with no support from the Arab League which on March 1, 2003 refused to consider a proposal from Kuwait and United Arab Emirates for Saddam to resign and go into exile without a trial.

"Mr. ., Berhanu ..was not forthcoming on American U.'s programs of aid for the poor and needy"

McNair might have been stereotyping J. Slovinec among groups of liberal protesters. Yet this barring order must have been distributed to every office on campus to make J. Slovinec look bad to American U. faculty, administration, and staff: this making someone look bad could cause comparisons of the barred individuals to burglars, sex p. 5

offenders: this circulation of order is still defamation, although J. Slovinec does not dispute that McNair has the right to tell someone to leave or not to visit American U. campus where crime is fortunately zero or low (in American U. Public Safety 2004 report on Library of Congress internet). It is within McNair's right to prevent demonstrations on campus. Actions New, Atlanta covered the officer's proper right to arrest Congresswoman Cynthia McKinney because she hit a Capitol Police officer who correctly told her three times to stop at a security checkpoint. Last summer, J. Slovinec applied for a job with Congressman Tom Lantos (D) who was arrested for a protest at the Sudanese Embassy: yet J. Slovinec did not know Lantos was involved in direct action, a movement where protesters want to get arrested like Cindy Sheehan (a couple of days after J. Slovinec saw her at a legal rally) which Tory Holt at World Without War Council told J. Slovinec about in 1985: she was a friend of Katrina Woito, the director's daughter. J. Slovinec himself only favors legal protests with permission of the police, including on the Iraq war, and it is unfair if McNair implies otherwise. The term campus "barring" is most frequently on the Internet in cases where law schools sought to bar military recruiters for discriminations against gays or homosexuals, and the U.S. Supreme Court ruling is respected of March 6, 2006, in *Fair v. Rumsfeld* where the U.S. Supreme Court upheld constitutionality of Solomon Amendment where universities who receive federal funds must allow military recruitment yet the court vigorously supported the right of law schools to oppose military discrimination against gays including the "Don't Ask: Don't Tell policy". McNair has already aligned himself with right-wing conservative Republicans in suppressing J. Slovinec's letter to Spellings.

Indeed, this is particularly bad when one considers investigations of Spellings' successor as domestic policy advisor at the White House, Claude Allen who was referred to as among "house Negroes" in March 15, 2006, Los Angeles Times, and Benjamin Ladner. After the quarrel with American U. emerged, Ladner's administration, probably unwittingly, became an accomplice to portray J. Slovinec who was excluded from any financing, who could only go to free classes in poorer African-American neighborhoods near the shelter where he resided and resides, and after some intimidation, Democrats in Congress were J. Slovinec's only choice for bosses. McNair might have wanted to intimidate J. Slovinec to cover up wrong actions of Ladner where American U. circles are often dominated by gossip about the investigation of Ladner including P. 5 of the May 1, 2006 Examiner where his chauffeir Reginald Green wrote "letters alleged Ladner and his wife had been using thousands of dollars for what appeared to be personal expenses" Former AU Trustee Len Jaskol said "all of us thought Ben Ladner was doing a good job..no one had any idea of the lavish lifestyle he was leading." Secretary Spellings also put J. Slovinec in position where he had little or no choice than to tell Democrats in U.S. Senate he was stranded at CCNV shelter with zero in his savings account, causing Democrats to believe they were being pressurized to serve as both J. Slovinec's rescuers and new employers. Ms. Kennard should access the Community for Creative Nonviolence should access the CCNV website which refers to it a center for the homeless with alcohol and substance abuse recovery programs, and alludes to mental health treatment of certain substance abusers: its jobs programs includes an ex-offenders program, and it has yielded bad results for me like no hiring for a job during a six-month

p. 6

*[handwritten at bottom:]* ACTION NEWS SYND ON ONT N/A APRIL 2006 ON INTERNET; PLEASE ACCEPT AMENDMENT...

period. J. Slovinec believes McNair was sarcastically making fun of barring orders at CCNV which could lead to explusion in a recent case which ended legally binding six-month time limits at CCNV, *Witcher v. D.C. Dept. of Human Services and Community for Creative Nonviolence*, Case No.: HS-P-05-200070 in D.C. Office of Administrative Hearings. After J. Slovinec tried to decide whether McNair was in good faith or bad faith, this request for damages became inevitable.

E. Request for jury trial; damages of $26,000 if American U. cannot agree to settlement: intent this is last lawsuit against American U.    I

For American U. Legal Counsel: Proposal mail with notice and acknowledgment

Service to Mary Kennard, 3201 New Mexico Av., N.W., Washington, D.C.

Joseph Slovinec, 425 2nd St NW
Washington, DC 20001

Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001 May 16, 2006

TO: MS. KENNARD
FROM: JOE SLOVINEC
MAY 16, 2006

Please tell interim President Kerwin and the Board of Trustees that if they desire to reopen negotiations on a settlement or equivalent measures to remove the causes of my U.S. Court of Appeals Case 05-7090 9 (FERPA, completion of 2-semester program with tuition waiver, and clearing my name from defamation) which has no payment of financial damages, I could drop this lawsuit in D.C. Superior Court which seeks damages against McNair after neglect of my bad financial state of only 88 cents in savings from August 2005 to Dec. 2005, zero from Jan. to March 2006, and less than $40 in the bank with only a few part-time paychecks with a total of less than $600 after March 24, 2006. I ask you to read my letter to Secretary of State Rice of March 17, 2006 with support of bipartisan values in studies at American U. and better cautions on projects on Colombia's peace talks with FARC rebels: Venezuela's government truthfully discouraged FARC or any Colombian soldier's entry within its borders. Alternative Dispute Resolution could resolve issues on my perception that Dr. Fisher's refusal to grade my Arab League paper was to stifle my criticism of Bush's lack of consultations with the Arab League on the 2003 invasion of Iraq and Reagan Administration's bombing of Libya in 1986. Thank you and I wish you success on the dialogue on governance reforms for better academic excellence at American University.

# AMERICAN UNIVERSITY

APPENDIX A
DC SUPERIOR COURT
5/10/2006

PUBLIC SAFETY

American University
Public Safety - Office of the Chief
4400 Massachusetts Avenue, NW
Washington DC 20016

Joseph Slovinec
5325 Westbard Avenue
Apartment 205A
Bethesda, MD 20816

Mr. Slovinec,

This letter is to advise you that you have been barred from American University (AU) Main Campus and the University Shuttle Services effective 05-17-2005 for disruptive activity at various university offices. The University reserves the right to deny access to the property and services at its discretion. If you are found on American University campus or shuttle bus, you will be subject to arrest and charged with Unlawful Entry under Section 22-3302 of the DC Code.

Any person who has received a University Barring Notice may file a written request to have the barring notice reviewed. This appeal must be filed with the Director of Public Safety not later than fifteen (15) calendar days after the Barring Notice was issued. If an appeal is not filed within this time, the Barring Notice is deemed final.

Regards,

*Michael McNair*

Micheal McNair
Chief of Police – Director
Public Safety Office of the Chief

*APPENDIX B*
*DC SUPERIOR CT/VID 5/16*

**RISK MANAGEMENT & SAFETY SERVICES**
**PUBLIC SAFETY**

# BARRING NOTICE
### CASE NUMBER: 050425

NAME: Joseph Slovinec

IS OFFICIALLY BARRED FROM

Main Campus and University Shuttle

OF THE AMERICAN UNIVERSITY

BARRING EFFECTIVE FROM 05/17/2005 THROUGH 05/17/2006



SHOULD THE ABOVE NAMED SUBJECT RETURN, THE SUBJECT WILL BE ARRESTED AND CHARGED WITH UNLAWFUL ENTRY, UNDER 22-3302 OF THE DC CODE.

SUBJECT: _____

SUPERVISOR: *Michael O McNair*

WITNESS: *Maurice D Custer*

DATE: 05/17/2005         TIME: 12:00:00 PM

Any person who has received a University Barring Notice may file a written request to have the Barring Notice reviewed. This appeal must be filed with the Director of Public Safety not later than fifteen (15) calendar days after the Barring Notice was issued. If an appeal is not filed within this time, the Barring Notice is deemed final.

---

Public Safety Building / 4400 Massachusetts Avenue NW / Washington, DC / 20016

*[handwritten: AC SUPREME CURT    VS COURT OF APPEALS
5/10/2006    APPENDIX A
APPENDIX C    5/11/2006]*

May 12, 2005

U.S. Secretary of Education Margaret Spellings
400 Maryland Ave., N.W.
Washington, D.C.

Dear Secretary Spellings:

I would like to file an institutional grievance against American University for lack of cooperation in requesting a federal loan to pay for my expenses this semester for a Graduate Certificate in Peacebuilding where I wanted to transfer the credit to either a Master's Degree in International Service program or a Master's Degree with a specialization in International Peace and Conflict Resolution. I currently have less than $1400 in all of my savings accounts and I am trying to apply for welfare in Maryland. Please give me relief with approval of a $14,000 federal student loan to pay for this semester's expenses: $10,700 would go for American U.'s expenses and the remaining $3100 would be enough for some food or lodging during the summer.

My most recent Chicago landlord does not have an apartment before July 1 and even if I want to attend school in Chicago, it is impossible before September. I am trying to find work in Washington and I would rather work. If I am not in school this summer, a crisis could occur since I do not have money or lodging if I move out of the Park Bethesda dorm May 16, 2005. The Maryland Dept. of Health and Human Services says I cannot use their emergency shelters: they are only for the mentally ill and substance abusers. The above $3100 would prevent this situation.

I had more than $23,000 in the bank in September 2004 from an original $200,000 of my father's inheritance. When I asked Dr. Fisher to admit me to the Graduate Certificate in Peacebuilding program in August 2004 when I could afford to pay for a semester, he delayed my start to January 2005. In September 2004 I gained approval of a FAFSA for Roosevelt University and advisors for Hospitality and Education postponed talks until it was too late for registration: I got an A in an Education class there in Autumn 2003, and when I had $55,000 in the bank George Olson at Roosevelt gave me the runaround about registering there so I could not register there in January 2004 after his claims I could register to continue in either Hospitality or education. Roosevelt again put me off in January 2005 when I told them it was more affordable to go there and wait until summer for American U.: I'm skeptical of talk of using them for more loans.

The grievance occurs because American U. was not cooperative in providing any of the financial aid Dean Goodman seemed to indicate in a December 2004 letter: campus jobs, where I applied for 16 and got no interviews; or private loans, where I was turned down for every private loan for which I applied. Although I had estate money, I was unemployed during 2003 and 2004 with 3 A civil service grades in Illinois and no job interviews. On March 3, 2005 Dr. Fisher, director of the Peacebuilding program, e-mailed me he had contacted an Assistant Dean about asking for certification of his

*[handwritten: (A-7)]*

*[handwritten: FIRST OF 6
APPENDIX C]*

Graduate Certificate in Peacebuilding program for federal loans. He never followed up on this, and when I asked him if American U. would help me apply to foundations for tuition money he seemed apathetic and said American U. only wanted to use private loans. On April 11, 2005 American University cancelled my registration when TERI, an IDAPP affiliate turned me down for a loan: they used unfair criteria like when I was billed for federal and state loans when I was unemployed between Sept. 2003 and Dec. 2004; a $814 sum where Edward Abankwa, a black man, tried to charge me for gas bills after I sold my deceased father's house to him; and Citibank's Ms. Tuttle repeated a false rumor I had not paid a judgment of $1135 in 1999 which I paid. Dr. Fisher e-mailed every grade of mine in his class was an A or A- or A- except one, a C on an exam: on April 28, 2005, he e-mailed he refused to grade my term paper on the Arab League and my final exam because my registration was cancelled. On May 6, 2005, after I complained to Dean Goodman, he gave me my group grade on Kashmir and he claims he will grade the papers if the classes are reinstated. American U. definitely would accept the federal loan money if you can send it to me. I had hoped to encourage the Bush Administration's work on peace like the road map with the Palestinians and the Central American Free Trade Agreement after President Bush visited the Clinton Library.

Mr. Sam Berhanu has been polite in receiving my financial aid requests yet he also was not forthcoming on American U.'s programs of aid for the poor and needy, and I e-mailed Dr. Fisher if tuition remission or free tuition is available for employees, I should be able to apply for it if I have less than $3000 in the bank and it was unfair to cancel my registration. My future work or schooling plans are disrupted with uncertain references from Dr. Fisher, a lack of references in Chicago during 2003 and 2004 when I was unemployed, and these issues. I might have to move: Please try to write me promptly at: Business: P.O. Box 282, 4410 Massachusetts Ave., N.W., Washington, D.C. 20016 or Home: 5325 Westbard Av., Bethesda, Maryland 20816 or phone 202-885-6347. Thank you.

With best wishes,
Joe Slovinec

*no response as of 6/12/2/05*

Copies to:
Dean Goodman
Dr. Fisher (faculty mailboxes)
William Esper - Legal Counsel's Office
Sam Berhanu - Financial aid office
(William wants Ingrid Valentine to also see this)

6/16/2005 - I want federal court case on this and amounts taught: refusal today of letting me in meeting...

### Lebanon

Lebanon had a peaceful era between 1945 and 1975 and has been enshrouded in a civil war of 1975-1991 and controversies since then. A summary of events in Lebanon is best in a study with desires to cover all members. Fact-finding was especially important in the Lebanon crisis of 1958 since it was difficult to know what exactly occurred with many rumors. When Lebanon accused the United Arab Republic of "arms smuggling" and "infiltration of armed personnel" from Syria into Lebanon,15 (Hassouna p. 61), during U.N. fact-finding the United Arab Republic representative "rejected the Lebanese charges as unfounded" and "propaganda" which was not given to the Arab League in good faith. Egypt felt more pressurized with U.N. Security Council criticism since Egypt hosted the Arab League headquarters. The U.S. was suspicious of Nasser because Americans felt Nasser became too radical and bought Soviet arms. Hassouna reported on p. 68 how tensions worsened after a pro-Soviet General Kassem overthrew and murdered the pro-American and pro-British King Feisal II of Iraq in a coup and on the next day, July 15, 1958, President Eisenhower sent U.S. troops into Lebanon at President Chamille Chamoun's request. Eisenhower sent troops basically to tell the Communists to stay out of Lebanon and Jordan. The 1961 crisis proved Kassem and somewhat more democratic Nasser did not work together when Nasser sent troops to protect Kuwait's independence yet Lebanon implied the opposite during 1958. Lebanon lacked solid evidence and without a real war Lebanon decided to end the accusations against the UAR in October 1958.

9

A vicious civil war broke out in April 1975 between warring Maronite Christian Phalangist and Moslem, pro-Palestinian militias. At a time when most blamed militias for the continued civil war in Lebanon in 1981, the Slovinec chart included Lebanon as an Arab League mediation case. It is noted that Syria was often unfairly blamed for outbreak for the Lebanese civil war in recent press accounts. Syria correctly gained Arab League support for its inclusion in an Arab League peacekeeping force in 1976 with "Syrian forces and token units of Libyans, Sudanese, and Saudis and to create a mediation commission" 16(Zacher p. 278). Chronicling the Lebanon war could take an entire book when we have 20 or less pages. Recent press speculation has been on correct implementation of the Taif, Saudi Arabia agreement to end the Lebanon civil war in 1989. Keesing's (1989, p. 36986) 17 relates the important role of an Arab League "troika" King Fahd of Saudi Arabia, King Hassan II of Morocco and President Benjedid of Algeria, the lone radical in the group, in mediating for peace and political reform at Taif. More ceasefire documents were signed in 1991 in Lebanon. King Fahd was famous for diplomatic and OPEC meeting work as Crown Prince and at this time the U.S. should honor the continuity of the King and Crown Prince Abdullah in mediations on Lebanon. The Saudis recently reminded Syria of Syria's obligation to first withdraw its troops to the Bekaa valley and then set a timetable for withdrawal of all troops in the Taif agreement. The Lebanese started demonstrating over these issues especially after the assassination of ex-Prime Minister Hariri in early 2005. Unfortunately, the warring militias both started the war in 1975 and tried to criticize the Taif peace in 1989 so Syria is correctly protecting its legitimate security interests in Lebanon in a compromise to withdraw its troops.

P. 10