IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA

Joseph Slovinec,  
  Plaintiff,  
  Vs.  
American University,  
  Defendant

06-1143  
(gk) Judge Kessler

COMPLAINT TO U.S. ATTORNEY GENERAL ALBERTO GONZALES ON DISHONEST STATEMENTS OF AMERICAN UNIVERSITY'S ATTORNEYS ON BARRING ORDER INCLUDING VIEWS CONTRARY TO AMERICAN UNIVERSITY'S STATED GOALS IN 'DISCRIMINATION AND DISCRIMINATORY HARASSMENT POLICY'

    The court is respectfully asked to file the attached legal memo where the identical text is in both Case 06-455 and Case 06-1143 of Joseph Slovinec vs. American University.

SERVICE IN U.S. MAIL TO: U.S. Attorney General Alberto Gonzales, U.S. Department of Justice, 950 Pennsylvania Av., N.W., Washington, D.C. and  
American U. Legal Counsel (hired with a contract) Christopher Hassell or Christine Ramapuram, Bonner Kiernan, 1233 20th St., N.W., Washington, D.C.. 20036  
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001, December 11, 2006

*Joseph Slovinec* (signature)


RECEIVED  
DEC 11 2006  
NANCY MAYER WHITTINGTON, CLERK  
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA
Slovinec v. American University, in Both Cases 06-455 and 06-1143

1. In this memo to U.S. Attorney General Alberto Gonzales, Plaintiff is still considering a request for renewed Motion for Intervention in Case 06-455 and for the first time, a Motion for Intervention of U.S. Department of Justice in Case 06-1143. This is due to dishonest conduct of American University attorneys and repeated violations or disregarding of Joseph Slovinec's civil and constitutional rights under 42 U.S.C. 1983 in addition to economic rights..
2. The court is notified that it is customary for the U.S. Attorney General to reasonably review a case for several weeks and notify both the requesting party and court if he wants to intervene. It is the duty of the Plaintiff to notify Mr. Gonzales that Judge Kessler issued an order on Dec. 5, 2006 that "Plaintiff's motion" for the Attorney General's intervention is DENIED WITHOUT PREJUDICE." This was a hasty court decision before December 18, the last day when Plaintiff reasonably wanted to amend pleadings under Fed.R.Civ.P. 15. Judge Kessler's ruling emboldens the dishonest conduct of American University which is described beneath here, and Judge Kessler is asked not to encourage Defendant's dishonest and harassing conduct. Her refusal to appoint a court-appointed legal counsel when Plaintiff could not afford to pay a legal counsel for depositions of American U. witnesses could be considered bias in American University's favor: Plaintiff earned less than $1700 during 2006.
3. Plaintiff Joseph Slovinec maintains the American University barring order was Caused by events of May 17, 2005, when Plaintiff when Plaintiff circulated a letter of about May 12, 2005, to U.S. Secretary of Education Margaret Spellings when Plaintiff complained about lack of access to financial aid and to homeless shelters in Maryland where the proximate cause was an American University eviction threat. American U. Public Safety Chief Michael McNair had more than one opportunity to respond to pleadings and he did not in specific detail. McNair claimed "disruptive activity" or activities occurred during Plaintiff's May 17, 2005 visit to Mr. Kumar of Campus Mediation whose work is related to an emergency crisis center, the Counseling office, April Hornung at Brenda Harner's Human Resources office where retaliation is accused for talk of filing an EEOC or discrimination complaint, Darryl Cook of Student Accounts, Carrie Trybulec of International Peace and Conflict Resolution, Amanda Taylor of School of International Service including FERPA file request (she was not in), and a Financial aid receptionist: Plaintiff maintains these were not disruptive activities according to D.C. Code or previously cited court cases (Plaintiff is constantly harassed by American U. attorneys to repeat material in earlier pleadings)
4. Defendant's counsel Hisham Khalid has entered a misleading false or nearly false Statement in pleadings for a Motion for Summary Judgment in 06-455 which indicates Benjamin Ladner violated AU's Discrimination and Discriminatory Harassment policy. Mr. Khalid is trying to gain an unfair advantage with overburdening Judge Kessler with pages of material: federal court precedent suggest he should only address the issue of the barring order as retaliation for the visit to Human Resources office of April and Brenda Harner. Item 7 of Hisham

Khalid's Motion for Summary Judgment says; "One particularly troubling incident occurred in April 2005, when Slovinec disrupted a meeting of the University President's Cabinet to warn the President that he was in danger of welfare and bankruptcy/" It is the only specific reason and proximate cause for barring order in the statement: Item "9. On May 17, 2005, the University barred Slovinec from its campus due to his erratic behavior." It is false and defamatory for Khalid himself, not his client, to say Joseph Slovinec disrupted meeting which, in a legal sense, means arguing or demonstrating. Mr. Ladner held an annual meeting with the Deans about April 19, 2005, which was open to the public and in the university newspaper. Ladner voluntarily recognized J. Slovinec in a question-and-answer session after the meeting when J. Slovinec informed Ladner if J. Slovinec was not allowed to transfer class credits from Graduate Certificate in Peacebuilding classes, where Ronald Fisher insisted on only private bank loans and no federal loans, to Master's Degree in International Service with federal loans, J. Slovinec was in danger of welfare or bankruptcy: American U. refused this request and indirectly refused J. Slovinec an emergency loan: whem Joseph Slovinec was unemployed between 2000 and 2005, Fisher and American U. sought a judgment against depleted money from Joseph Slovinec's father's estate: they miscalculated since money was already spent. J. Slovinec had $23,000 in August 2004 when he first asked to enter American U. and Fisher's committee postponed his requested entry to January 2005 when he had $8700: he had less than $3200 in May 2005: Fisher and staff were lazy about getting grants or other forms of aid and sought exploitation and unjust enrichment from last funds from J. Slovinec's father's estate with deficient job search advising. J. Slovinec handed Mr. Ladner a letter about the issue in court exhibits and Ladner politely said it should be "private", walked away, and resumed the meeting. Since Khalid said the barring order was issued for this reason, Ladner and Public Safety violated a March 1999 policy which is still in effect, Discrimination and Discriminatory Harassment (see American University website: Student Handbook and Planner 2004-2005, http://www.american.edu/handbook, Discrimination/ Policy.html' "American University provides equal opportunity for all qualified persons in its educational programs and activities. It also seeks to be a community in which freedom of expression and vigorous debate are valued and provided to all its members free of all forms of discrimination and harassment, including but not limited to exploitation, coercion, and intimidation."
This also means Christopher Hassell's statement on First Amendment is false

5. On November 28, 2006, the court records of Case 06-1143 indicated Mr. Hassell, or a transmission signal, erroneously listed "American U." as "Gallaudet" which escalated tensions and anger, Hassell entered a false "8[th] Defense" "Defendant denies the First Amendment is applicable to it.": this is false because Discrimination and Discriminatory Harassment Policy says American U. supports "freedom of expression." Judge Kessler has not corrected Hassell for sending Joseph Slovinec's pleadings to the wrong address, 4252 N St., N.W. and he could only find above pleading on court computer: in August 2005, Judge Kessler's clerk erroneously listed J. Slovinec's address at 3023 N. Clark St.: these jokes and tactics are used to intimidate liberals who resided in Chicago's 44th Ward P. 2

like Plaintiff did with a large gay population: American U. claims to oppose discrimination on the basis of sexual orientation. Gallaudet protesters used words like "retaliation" like Mr. Slovinec's case and referred to a search for a new President like American U." Mr. Slovinec did not influence these actions.

6. Mr. Khalid has left uncorrected an earlier false or erroneous defense in 06-455: "Tenth Defense of June 5, 2006 - :Plaintiff's claims are barred to the extent he failed to properly exhaust administrative remedies" when Plaintiff exhausted his rights to appeal to EEOC which did not investigate yet sent a letter where EEOC also said it did not say American U. was innocent of statute violations.

7. Plaintiff J. Slovinec wants to ask the U.S. Department of Justice to investigate all possible causes of what he believes is racial hostility in black Maurice Carten or Carter's signing of the order barring J. Slovinec from visiting American U. campus: these should include if Carten or friends had any relatives who were African-American gang members and hated J. Slovinec's past ties to the Chicago court system, or Maurice's racial identification with J. Slovinec's most recent African-American supervisor, Cynthia Faleti at the Illinois Dept. of Human Services, who laid him off after asking J. Slovinec was an investigator because he is white. American U. claims to oppose racial harassment: "racial harassment occurs if a racially hostile environment has been created that is sufficiently severe, pervasive, or persistent so as to interfere with or limit the ability of an individual or group from participating in or benefiting from the services, activities, or privileges afforded to members of the university community."; Ingrid Valentine's indirect refusal of an emergency loan caused Plaintiff's eviction to CCNV homeless shelter with hostile racial environment during job search, and in particular if Maurice's barring was linked to events of previous week: intent to:

    A) cover up Ladner's alleged financial mismanagement which was under investigation by U.S. Dept. of Justice and his tensions with ex-employee Reginald Green who sues university
    B) express hostility to J. Slovinec's receiving of e-mails from Federal Bureau of Investigation about jobs a couple of days before barring
    C) form a combination with conservative white corrupt defense contractors who were hostile for civil liberties work of U.S. Senator Patrick Leahy who J. Slovinec saw at a memorial service for Marla Ruzicka about May 14, 2005, where J. Slovinec received an e-mail from Zen Hunter, assistant to AU's International Peace and Conflict Resolution Director Abdul-Aziz Said. Maurice's order intimidated Dr. Said and Zen to end e-mails and left J. Slovinec in a state of near-solitary confinement before pressure for him to reside at the most African-American CCNV homeless shelter for over a year near African-American substance abusers and ex-offenders.
    D) Although this was not on e-mail, J. Slovinec attended the National Law Enforcement Officers' Memorial Service the weekend before May 15, 2005, where J. Slovinec saw U.S. Attorney General Alberto Gonzales give a speech and where black criminals or family or friends would feel hostile to honors for past officers like a white police officer in Chicago, John Knight, who a black murdered on January 9, 1999. END OF MEMO p. 3



# AMERICAN UNIVERSITY
WASHINGTON, DC

## DISCRIMINATION AND DISCRIMINATORY HARASSMENT POLICY

### I. Non-Discrimination and Equal Opportunity Policy

American University provides equal opportunity for all qualified persons in its educational programs and activities. It also seeks to be a community in which freedom of expression and vigorous debate are valued and provided to all its members free of all forms of discrimination or harassment, including but not limited to exploitation, coercion, and intimidation. To achieve these goals, the university has adopted a policy prohibiting discrimination and discriminatory harassment on the basis of race, color, religion, national origin, sex*, age, sexual orientation, gender identity and expression, disability, and any other bases under federal or local laws ("Protected Bases"). The policy of non-discrimination and equal opportunity applies to every aspect of the operations and activities of the university, including admissions and employment. This policy is also consistent with the Equal Opportunity, Affirmative Action, and Non-Discrimination policy approved by the university Board of Trustees.

Non-discrimination and equal opportunity is not only a matter of university policy but it is also a matter of law. Discrimination and discriminatory harassment based on any of the Protected Bases above is a violation of federal and/or local law. Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, or national origin in educational institutions. Title IX of the Education Amendments of 1972* prohibits sex discrimination in education institutions. Title VII of the Civil Rights Act of 1964* and the D.C. Human Rights Act prohibit discrimination in employment and in general.

### II. Discrimination and Discriminatory Harassment

The university respects the rights of its members to hold, vigorously defend, and express their ideas and opinions in an atmosphere of mutual respect, understanding, and sensitivity. Not every act that might be offensive to an individual or a group necessarily will be considered a violation of this policy.

However, the right to free expression does not excuse engaging in discrimination or discriminatory harassment. One of the most common types of discrimination and discriminatory harassment is based on race. The following definitions and examples also apply to discrimination and discriminatory harassment based on any of the other Protected Bases.

Racial discrimination occurs when one party treats an individual or group differently on the basis of race, color, or national origin without a legitimate, non-discriminatory reason so as to interfere with or limit the ability of that individual or group from participating in or benefitting from

the services, activities, or privileges afforded to members of the university community.

Racial harassment occurs if a racially hostile environment has been created that is sufficiently severe, pervasive, or persistent so as to interfere with or limit the ability of an individual or group from participating in or benefitting from the services, activities, or privileges afforded to members of the university community. Racially harassing conduct which could create a racially hostile environment includes, but is not limited to slurs, jokes, and other verbal, audio, written, computer generated, graphic or physical conduct.

Individuals or groups who engage in discrimination or discriminatory harassment, as defined by this policy, will be subject to disciplinary action up to and including termination from employment or dismissal from the university. Whether a specific act violates the policy will be determined with proper regard for all of the circumstances.

III. Discrimination / Discriminatory Harassment Grievance Procedures

A. **Informal Procedures / Mediation and Consultation**

American University is committed to the voluntary, expeditious, and informal settlement of discrimination disputes through discussion. Therefore, if you believe you are a victim of discrimination or discriminatory harassment, you are encouraged to use these informal procedures, which may include addressing the alleged harasser directly, whether in person, in writing, or in a facilitated meeting with an appropriate university official listed below. In any case, you should contact the following individuals or offices to report the offending conduct and to receive assistance or information on university policies. Also, if you are told of an incident involving discrimination or discriminatory harassment, you should notify the appropriate person listed below.

| *If the alleged harasser is:* | *Notify:* |
|---|---|
| 1. student or student group | dean of students |
| 2. faculty member | dean of the faculty member's school/college |
| 3. dean | provost |
| 4. staff member | executive director of human resources |
| 5. executive director of human resources | vice president of finance and treasurer |
| 6. other (e.g. vendor, guests) | executive director of human resources |
| 7. vice president or provost | president |
| 8. president | chair of the board of trustees |

Assistance provided by the above individuals may include, when appropriate, mediation between the parties and referral to other offices for complaint resolution. Informal complaints should be written and may result in any outcome to which the parties agree. Informal procedures should be carried out expeditiously and should not exceed 30 days from the initial consultation.

B. **Formal Procedures**

If informal measures are not successful or if you prefer a formal procedure from the outset,

2