IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Joseph Slovinec,
  Plaintiff,
  Vs.
American University,
  Defendant

06-1143
(gk) Judge Kessler

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
2007 APR -4 PM 6: 17
NANCY M.
MAYER-WHITTINGTON
CLERK

RECEIVED
APR 4 - 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

COMPLAINTS TO D.C. GOVERNMENT AND CITY COUNCILMEMBER MARY CHEH: D.C. RIGHTS TO REGULATE SEVERAL ISSUES INCLUDING DISCOVERY, WELFARE REFORM ACT, AND HOMELESS SERVICES REFORM ISSUES CONSISTENT WITH FEDERAL LAW

1. Plaintiff Joseph Slovinec is addressing this particular page of the message to D.C. City Councilmember Mary Cheh of the 3rd Ward and American University Legal Counsel Christopher Hassell of Bonner Kiernan. Joseph Slovinec is willing to allow discovery to proceed yet he feels the entire process should be reported to D.C. officials and commissions after Joseph Slovinec's complaints that American University was a harassing institution during Benjamin Ladner's Presidency and these policies have not been sufficiently corrected during the administration of Interim President Cornelius Kerwin and the current Board of Trustees. J. Slovinec notifies Mr. Hassell his cooperation with his decision to remove above case to federal court does not eliminate the need to report to D.C. officials issues involved in J. Slovinec's allegation American University Public Ssafety Chief Michael McNair and Maurice Carter have constantly to ask the D.C. Police to arrest Joseph Slovinec for violation of D.C. Code 22-3302, Unlawful Entry, on basis of false accusations J. Slovinec was guilty of disruptive activity under D.C. Code 22-3302 when real reasons for barring was an unpaid bill and distribution of a letter to several campuses where J. Slovinec complained of lack of access to financial aid homeless shelters in Maryland after an eviction threat from American University Housing and Dining Director Julie Weber. Mr. Hassell has improperly and insensitively made statements which would offend D.C. City Council.

2. **MR. HASSELL RIDICULED GALLAUDET UNIVERSITY IN A MISTAKE WHERE AMERICAN U. WAS DEFENDANT AND HE CALLED IT "GALLAUDET": HIS MEMO IS CONTRARY TO AMERICAN U. POLICY WHEN HIS EIGHTH DEFENSE SAID: "DEFENDANT (AMERICAN UNIVERSITY) DENIES FIRST AMENDMENT IS APPLICABLE TO IT"**

In Item #22, Mr. Hassell's answer of November 28, 2006, made above mistake of calling "American U." "Gallaudet", a sign of insensitivity to frustrated deaf students who started a protest where they blocked entries and were arrested by D.C. police. Mr. Hassell has a complete lack of understanding that a major cause for defamation lawsuit is that after American U. virtually forced me, Plaintiff, to reside at CCNV homeless shelter, I've had 100% access to U.S. Capitol with U.S. Capitol Police guards: arrests under D.C. Code 22-3302 are only made for arguing, demonstrating, and blocking entries to buildings

which are "disruptive": I, Plaintiff, have never engaged in a disruptive activity in D.C. and I was never arrested for any reason since 1984, and U.S. Capitol Police acted properly when they escorted a demonstrator out of the room when they yelled to interrupt a speaker during the U.S. Senate Foreign Relations Committee hearing on Iraq with ex-Congressman Lee Hamilton and ex-U.S. Secretary of State Baker a few weeks ago. **I must emphasize the demonstrator did not speak to me and did not act with my encouragement: and this was the only incident of disruption I witnessed since I arrived in D.C. January 2005.** Although U.S. Department of Justice has declined to intervene in case or investigate my charges of dishonest statements by American U. attorneys, I, Plaintiff J. Slovinec ask the D.C. City Council committee which investigates civil liberties issues to investigate statements made by both attorney Christopher Hassell in this case and Hisham Khalid for American U. in a related EEOC case, 06-455, which contradict official American University policy and could result in a request for Fed.R.Civ.P. 11 sanctions if statements like these are not corrected: **The official American University President, administration, and Board of Trustees policy on Discrimination and Harassment reads: "At American University, freedom of expression and vigorous debate…valued..free (from) all forms of discrimination and harassment, including..exploitation, coercion, and intimidation' which contradicts Mr. Hassell's Eight Defense "Defendant denies First Amendment is applicable to it." This worsens when American U. ex-President Benjamin Ladner voluntarily recognized J. Slovinec and took a letter from him about April 19, 2005 in his only public meetings of the year at Kay Center, Mr. Khalid wrote " April 2005, Slovinec disrupted a meeting of the President's Cabinet to warn the President he was in danger of welfare and bankruptcy.", Item 7, Motion for Summary Judgment about Jan. 2007** Interim President Cornelius Kerwin's website includes information on the U.S. Department of Justice investigation of Ladner for financial misconduct in October 5, 2005 and what J. Slovinec believes was an identical meeting a year later on April 11, 2006 of President's Council: With reluctance. Plaintiff J. Slovinec decided earlier today that he wants to ask for court subpoenas for testimony from any official who knew about McNair's barring order, the equivalent officials to those who received a similar barring order for Jordan Nott at George Washington University, and on above meeting and issues, Cornelius Kerwin, his assistant David Taylor, the staff of Kay Spiritual Center who kept records on opening of the meeting to the public, and American Weekly on what J. Slovinec remembers as a public notice of the meeting: there will also be subpoenas on American U. responsibilities under the Welfare Reform Act and Homeless Services Reform Act. J.. Slovinec's bank accounts went down to zero in January 2006 and he has never been able to obtain full-time employment since he left American U. after April 2005: his earnings were only $2700 in 2006 and his main employer is also in the 3rd Ward: **J. Slovinec asked Mayor Fenty for a "Do-Not-Call" order for Mr. Hassell not to call his present employer which is related to his insensitivity to Gallaudet's hosting of a graduation ceremony for his Food Stamp Employment Training class at University of District of Columbia/Van Ness: Please read on about exploitation. Plaintiff J. Slovinec believes local D.C. businesses could become annoyed since during discovery both sides would ask businesses who did not hire J. Slovinec if they knew of the barring order and J. Slovinec would want them to know both sides of the story: McNair claimed distribution of the letter to**

2

Spellings was a "disruptive activity" and J. Slovinec claimed it was not under ordinance, and McNair was motivated by an unpaid bill and American U. catering to corrupt Republicans who disliked J. Slovinec's lawsuit against George Ryan..

3. **STATEMENT ON VIOLATION OF EXPLOITATION POLICY IN HARASSMENT POLICY** The several requests of American University for money to pay the Spring 2005 bill for classes, which were cancelled for nonpayment, and grades were never recorded were connected to an unjust policy of exploitation and desired unjust enrichment from the last dollars of J. Slovinec's father's estate which went down from $23,000 in August 2004, when Peacebuilding Director Ronald Fisher postponed action on J. Slovinec's admission application probably to wait until after Bush's re-election to zero in January 2006: Fisher and Lochlann Boyle had a partially sincere and poorly planned policy of advising students on job searches where they did not actually care if short-term students like J. Slovinec, in a two-semester program on Peacebuilding, found work: American University runs several Washington Semester programs for undergrads where Illinois lenders pay fees and then welcome students back to their home college in Illinois: Fisher used similar tactics when he only offered classes with no internships and only one meetings was AICPR professionals on April 12 where the isolated J. Slovinec could not attend an American U. gay group's ward for D.C. Police Sgt. Brett Parson. Exploitation occurred when J. Slovinec brought $8700 in Jan. 2005, spent several weeks on expensive hotel rooms, and then after delays, Fisher told J. Slovinec he could only recommend staying at the Park Bethesda for $1393 per month: his readings in the Kriesberg book had only 5 pages on Kuwait and Iraq, a trial fight where J. Slovinec resented implied pressures from Fisher to get Illinois government or Democrats to pay his bill: Fisher only used private bank loans and most of attenders at his Summer Institute for Peacebuilding and Development were wealthy or got, probably, tuition payment from an employer like the United Nations. Mr. Khalid did not understand : after Sallie Mae gave him a loan deferment to attend American U. in Spring 2005, Mary Muncie at Spellings' office put his loans in default June 22, 2005, causing him to become a pauper with zero in bank in Jan. 2006. J. Slovinec therefore asks for any remedies for these uncooperative actions of American U. **Refusals of American U. to answer 06-455 interrogatories on: #6 Job Search advising roles of SIS Dean Goodman, Dr. Fisher, and Lochlann Boyle; #8 Dean Goodman's refusal to answer questions on J. Slovinec's feeling it was a bad idea to keep him on campus with no financial aid; #10 no access for evicted American U. students to urgent or displaced workers programs, #11 Bishop Schol's refusal to answer questions on Methodist shelter at Metropolitan Memorial Church. Exploitation existed when after American U. manipulated J. Slovinec to stay at Park Bethesda and evicted him, American U. dumped responsibility for J. Slovinec on several mostly black institutions: CCNV shelter where he lived on food stamps since August 2005 and where a caseworker only suggested a kitchen worker job training programs: Medical Assistant at SOME, Catholic Charities, Goodwill, CEEP. Mr. Kerwin tried to work for reforms after Ladner and he was a past Dean of School of Public Affairs yet he and Dean Leo Grande have not responsibly acted on above issues, and Mary Cheh is asked to host a community forum to discuss these topics..**PROOF OF SERVICE: In U.S. Mail to Christopher Hassell, Bonner Kiernan, 1233 20th St., N.W, Washington, D.C. 20036Joseph Slovinec, 425 2nd St., N.W. Washington, D.C. 20001 April 4, 2007

CC: Tommy Wells

*Joseph Slovinec*

MS. CHEH: PLEASE INFORM ME OF ALL D.C. MEDIATION SERVICES ON ABOVE ISSUES APPEND. X A. EXPLOITATION- AMERICAN U, IGNORED MY REQUEST FOR EMERGENCY LOAN, APPENDIX B: FISHER- HARASSMENT OF HOMELESS

## American University Programs

### Restricted University Loans

Loans are available to needy students at American University on a short- and long-term basis. Funds are provided either by pri-

28 Tuition, Expenses, and Financial Aid

APPENDIX A - DC CITY COUNCIL EXPLOITATION: AMERICAN U. HAS IGNORED MY JUUZM'S REQUEST FOR ONE. I HAD ZERO IN BANK

vate endowments to the university or by the university itself. The qualifications for each of these programs vary according to the stipulations that the donors have made for the individual accounts. Funds are extremely limited and are considered a resource of last resort.

*Alumni Association Loan Fund*: The American University Alumni Association has established a loan fund for American University alumni who are pursuing part-time graduate study. The loan must be repaid with 2 percent interest.

*Frank W. Ballou and Adeline J. Ballou Memorial Loan Fund*: This loan fund was established in 1985 by Mrs. Adeline J. Ballou of Washington, D.C. Its purpose is to assist needy and deserving students who are enrolled full-time in a degree program.

*Morris and Gwendolyn Cafritz Foundation for Middle Income Students Loan Fund*: This revolving loan fund was established by a grant from the Cafritz Foundation of Washington, D.C. for middle income students who, without this assistance, would not otherwise be able to continue their education. Interest accrues at the rate of 7 percent per annum.

*Class of 1932 Loan Fund*: These funds are lent to worthy and needy full-time undergraduate students. Interest accrues at 4 percent per annum.

*Sinclair B. Dell Loan Fund*: A memorial loan fund was established to honor Dr. Sinclair Dell, a Washington podiatrist, who died of cancer in 1975. Repayment must be made within one year of the award at 2 percent interest.

*General University Loan Fund*: This loan is designed for both graduate and undergraduate students with no outstanding debts to the university. The interest is 4 percent per annum.

*Rose Mae Howard Memorial Loan Fund*: This fund was established in 1975 by the Rose Mae Howard estate to assist students who are in need of financial aid to complete their education. This loan is awarded to full-time undergraduates and bears a 9 percent interest rate upon repayment.

*The Interfraternity Council Orphan Fund*: This loan fund was provided by the American University Interfraternity Council beginning in 1961. Recipients must be male orphans under 21 years of age. There is no interest charge on repayment.

*Willett M. Kempton Loan Fund*: These loans are awarded to full-time graduate or undergraduate students in the School of Communication. The interest rate is 4 percent per annum.

*Kogod School of Business Student Loan Fund*: The loan fund was established to help part-time or full-time undergraduate and graduate students who are enrolled and are in good standing in the Kogod School of Business. Terms of the loan include a 5 percent rate of interest which will accrue on receipt of the loan. Repayment begins six months after graduation. This loan may be applied for in the Financial Aid office.

*Ida Letts Educational Loan Fund*: This fund is for full-time undergraduates. The interest rate is 2 percent per annum while the recipient is enrolled full-time and 4 percent per annum after enrollment at American University ceases.

*Long Loan Fund*: This loan was designed for the daughters of United Methodist ministers in the College of Arts and Sciences. The interest rate is 4 percent per annum.

*Anna Mary Mann Memorial Loan Fund*: These funds are restricted to women in the Kogod School of Business and the School of International Service. The interest rate is 4 percent per annum.

*William Hill McKenzie Loan Fund*: This fund was established in September 1968 in memory of William Hill McKenzie IV, who died in March 1968 and was awarded a Bachelor of Arts degree posthumously in June 1968. It provides emergency assistance to full-time, married seniors at American University. Four percent interest accrues from the date the loan is made.

*Shirley E. Minus Loan Fund*: This fund is designed to aid undergraduate students in good standing at the university. The fund is especially suited to students who may not qualify for other financial aid. Three percent annual interest will accrue on the unpaid balance beginning nine months after graduation or separation from American University.

*Thomas Moore Emergency Loan Fund*: This fund was established in January 1970 by Theodore and Lillian Moore as a memorial to their son Thomas, an American University sociology student killed in an automobile accident in 1969. Students may borrow up to $50 to meet financial emergencies.

*Morris Morgenstern Loan Fund*: This loan was established in 1972 by the Morris Morgenstern Foundation of Long Island, New York. It is issued for no longer than one year to students in need of emergency assistance. Funds are not available to freshmen. The interest rate after the due date is 4 percent per annum.

*Stanley Posner Student Emergency Loan Fund*: A short-term, no-interest loan fund to assist students in emergency situations. Loans are to be repaid in thirty days and will not exceed $50.

*Real Estate Alumni Loan Fund*: Established to assist needy students enrolled as real estate or finance majors or both in the Kogod School of Business. First preference is given to real estate majors and to junior, senior, and graduate students. Current interest is 9 percent.

*Roland Rice Loan Fund*: Borrowers of this loan must be students who are not qualified to receive aid from other student aid sources available at the university. Interest accrues at 4 percent per annum. The loan must be repaid within two years after graduation.

*Residence Hall Association Emergency Loan Fund*: Established in 1965 by the Women Residents Association to assist women living in the residence halls. The fund was altered in 1976 to include men residing in campus housing. This is a short-term loan.

*Bertha Roberts Loan Fund*: Made possible by a bequest from the Bertha Roberts estate in 1973, the fund provides interest-free loans to young men and women preparing for Christian ministry or missionary work, or other religious positions. Interest accrues at 5 percent on the unpaid balance if a default occurs; otherwise the loan is interest free.

*Skaskan Family Student Loan Fund*: This fund is available to full-time undergraduate and graduate students who are in their last year of study. The interest rate is 9 percent.

APPENDIX D

*[Handwritten at top:]* 4/4/2007 APPENDIX B, 06-1143 D.C. CITY COUNCIL FEB 21 REQUEST TO MAYOR FENTY FOR INVESTIGATION OF R. FISHER FOR HARASSMENT OF HOMELESS (AMERICAN v. POULY VIOLATION) WHEN APPENDIX A ISSUE IN A.U. HAS EMERGENCY LOANS /s/ J Slovinec

```
-------- Original Message --------
Subject: Re: 609 Registration
Date: Mon, 05 Sep 2005 12:28:53 -0400
From: Ronald Fisher <rfisher@american.edu>
Organization: SIS - American University
To: Joseph Slovinec <js2169a@american.edu>
CC: perillo  <perillo @american.edu>
References:
<OF5F9172B5.AEB76BF9-ON85257070.0002F368-85257070.0002F370@american.edu>
```

Hi Joe, As indicated in my email of April 28, your registration at AU has been cancelled and will remain so until there is payment of outstanding fees. Thus, there is no basis to discuss your registration in the peacebuilding certificate. Also, please note that I did not give you my permission to use my name as a reference in your job search or any future applications you may make. Please address all future inquiries to the Office of the University Counsel. Sincerely, Ron Fisher

Joseph Slovinec wrote:
> From Joseph Slovinec: It is urgent for you to call me at 202-393-1909
> by 10 A.M. Sept. 2 if you want to discuss a fall registration with a
> tuition-and-fee waiver to cover Spring tuition and Autumn 2005 tuition:
> a slight adjustment to complete Graduate Certificate in Peacebuilding by
> Dec. 2005. I am in a homeless shelter after my eviction from Park
> Bethesda with only 88 cents in my only D.C. bank account: I cannot even
> get bus tokens for job trips. I want a clarification of A.U.'s role in
> my job search since you and Professor Nan are only references since
> 12/03 and I can't return to Roosevelt in Chicago with no federal loan:
> there is a chance someone among the 76 jobs I applied for might say yes
> although I arrived in D.C. Jan. 2005

--
Ronald J. Fisher, Ph.D.
Professor of International Peace and Conflict Resolution
School of International Service
American University
4400 Massachusetts Ave. N.W.
Washington, DC 20016-8071, U.S.A.
Tel: 202 885 1547
Fax: 202 885 2494


--
Ronald J. Fisher, Ph.D.
Professor of International Peace and Conflict Resolution
School of International Service
American University
4400 Massachusetts Ave. N.W.
Washington, DC 20016-8071, U.S.A.

*[Handwritten at bottom:]* AND TO MAYOR FENTY FEB 21, 2007

APPENDIX A
v. S SUPREME COURT
NOV. 2, 2006