IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Joseph Slovinec,                                         06-1143      06-1143

   Plaintiff,                                            (gk) Judge Kessler

   Vs.

American University, Defendant

FILING OF MEDIATION PROPOSAL, LIST OF FOUNDATIONS, AND NOTE TO MAYOR FENTY ON REQUESTED MEDIATION ON ACCESS TO CAMPUS

Plaintiff Joseph Slovinec files these documents with the court for public inspections on or after May 9: Proposal for Issues in Mediation in Joseph Slovinec's Negotiations with American University, Potential Resolutions of Issues in Case 06-1143, American University; Lack of Sources for Grants other than Miscellaneous Federal Grants (at phone 1-800-592-0362 in April 23, 2008 pleading); Note to Mayor Fenty to ask American U. to notify him, D.C. Attorney General, and Plaintiff of policies on financial aid: request for use of American U. community relations office and cooperation with U.S. Department of Labor investigator Elbe Cohon. Mr. Hassell is asked to take filings on Ms. Cohon. J. Slovinec is limiting this particular filing to 6 pages since he knows Mr. Hassell might find the issues confusing and he intends to write to American U. Director of Peacebuilding Charles Call, Financial Aid, and, with no objections since the late April filing, to Democratic Presidential campaigns next week about the Summer Institute, potential research topics, and exploration of funding. Mr. Hassell is encouraged to write J. Slovinec about questions on the letter to President Bush: Major sourness was caused when the Bush Administration's Sallie Mae offered J. Slovinec a federal loan deferment in January 2005 as an incentive to attend American University and then caused a student aid cutoff when U.S. Secretary of Education Spellings put J. Slovinec's student loans in default June 22, 2005: this prevented J. Slovinec from returning to Chicago and Roosevelt University in September 2005. A vigorous debate could occur on whether it was fair to expect American U. to market J. Slovinec for work in Washington, D.C. in Autumn 2005 with only 2 D.C. references from Professors Fisher and Nan after J. Slovinec was in Chicago 1989-2005: however, questions go on on how Fisher's claim of lack of permission for a reference made a viable job search impossible along with the American U. barring order. Fisher's ties to Bush-Cheney American and related Canadian defense officials in United Nations positions are an issue since Fisher did work for UNITAR: these have bad personal relations with Chicago Democrats who opposed the Iraq war, and Fisher probably knew J. Slovinec resided near wealthy Democratic Party donors in Chicago before he was admitted to American U.. This caused a fake myth where black and Hispanic D.C. workers felt J. Slovinec looked like a wealthy white who did not need worker training when J. Slovinec's income was zero in 2005, $2700 in 2006, and about $4000 in 2007.

PROOF OF SERVICE: By hand-delivery to: Christopher Hassell, Bonner Kiernan et al., 1233 20th St., N.W., Washington, D.C. 20036

Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001 May 8, 2008   Joseph Slovinec

RECEIVED
MAY 09 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DEFECT: THIS IS FROM CCNV PRINTER WITH PRINTING PLEASE WRITE FOR CLARIFICATIONS, RETYPED SECTIONS

IN U.S. DISTRICT COURT CASE 06-1143: APPENDIX A TO MAY 8 FILING OF MEDIATION, ET AL. IN SLOVINEC V. AMERICAN UNIVERSITY

Memorandum of May 8, 2008: To: Mayor Adrian Fenty, 1350 Pennsylvania Av., N.W., Washington, D.C.
From: Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001

Re: American U. and responsibility to help me develop an educational or employment plan to earn enough to move out of CCNV shelter and evaluate past roles of American U., UDC/ Van Ness FSET

I was pleased with a preliminary news report that a new community relations director, Penny, who worked for D.C. City Councilwoman Patterson was hired at American University: I need more details, and ask you to work together with her and David Taylor of President Kerwin's staff on community relations for mediation of several issues during May 2008. I want to ask American University to clarify whether I can attend Summer Institute on Peacebuilding and Development this summer with financial aid if American University wants to give it to me. I have less than $500 in the bank. I cannot pay past charges from Spring 2005 for an unpaid bill in Peacebuilding classes although I would cooperate with American University Financial Aid office in filling out forms for a grant to pay the charges. Since American U. already sought relief by cancelling my enrollment, perhaps a compromise could be reached like allowing me to take Peacebuilding classes this summer and not recording Spring 2005 grades, a revision of my past insistence on a court order to record the grades. I could promise to only visit American University if School of International Service and Financial Aid gives definite permission for me to attend a class. I told D.C. Assistant Police Chief Groomes in January 2008 I would not pressurize to insist on my presence on the campus and it merited a consultation with D.C. Attorney General Nickles. I ask American U. to write him. I lack time today to cover all my requests for investigations, and none were dropped. If American University totally refuses to allow me to complete the Graduate Certificate in Peacebuilding program within a 6-year time limit of its start in January 2003, or by Dec. 2008, it should use documents to courteously inform the court other than ones it used in the past. I intend to send a cc: to tell American University Public Safety staff that it was wrong to issue a barring order against my visiting American University between May 17, 2007 and May 17, 2008 since it interfered with two legal purposes for me to visit campus: either court-ordered discovery or informal questions in U.S. District Court Case 06-1143 where Public Safety accused me of disrupting campus for politely delivering an institutional grievance against lack of financial aid to U.S. Secretary of Education Margaret Spellings,; and D.C. Department of Employment Services worker retraining classes if I wanted to enroll in them. I ask both you and American University to cooperate with my request for U.S. Department of Labor Civil Rights Division Elbe Cohon's investigation of my allegations I was improperly refused access to any D.C. Department of Employment Services worker training programs between Jan. 24 and Feb. 19, 2008. Mr. Hassell and Sarah Lanhecher's office were informed of charges. Mr. Mayor, I respectfully ask your office to discuss any allegations of financial mismanagement at CCNV under Mr. Nurriddin's leadership and and that it is undesirable to continue my residency at CCNV for 2 ½ years after my eviction from an American University dorm. I also want discussion of my feeling it was wrong for Public Safety to imply I was behaviorally disturbed and was bad for students. I told Jack Cassell's office I want to keep the name of my employer secret since they are a liberal group who raised funds for American Civil Liberties Union and criticized National Security Agency since I have reported to work for that 2nd Ward office since March 3, 2008, I am able to politely attend classes with students. I am busy and will clarify this later.
Cc: American U. Public Safety

APPENDIX B MAY 8, 2008

PROPOSAL FOR ISSUES IN MEDIATION IN JOSEPH SLOVINEC'S NEGOTIATIONS WITH AMERICAN UNIVERSITY, POTENTIAL RESOLUTIONS OF ISSUES IN CASE 06-1143, SLOVINEC V. AMERICAN UNIVERSITY

1. This memorandum is intended for filing in U.S. District Court Case 06-1143, Slovinec vs. American University with a desire for special attention from the new Director of Community Relations at American University in cooperation with President Kerwin and David Taylor, Mayor Fenty, and mediators at Foundry United Methodist Church near Joseph Slovinec's place of employment. A copy will be provided probably by hand to Christopher Hassell of Bonner Kiernan, legal counsel for American U. in 06-1143.

2. POTENTIAL COMPLETION OF GRADUATE CERTIFICATE IN PEACEBUILDING PROGRAM: I, Plaintiff Joseph Slovinec, desire to explore completion of Graduate Certificate in Peacebuilding program by December 2008, within four years of starting the program in January 2005. J. Slovinec will write a letter by next week to the new Director of the Graduate Certificate in Peacebuilding program, Charles Call, with research topics. This letter is mainly for other D.C. and Community Relations issues. If Professor Call's office wants to discuss it and the Financial Aid office wants to give a scholarship, J. Slovinec still wants to attend this year's Summer Institute on Peacebuilding and Development June 2-20, 2008. Mr. Hassell is asked to correct any previous discrepancies on availability of financial aid. In regards to payment of his Spring 2005 charges, J. Slovinec can only say this could more easily be done with American U. financial aid or loan where he could repay as percentage of income: he cannot pay from his own pocket with less than $500 in bank and again believes it was unreasonable for Professor Ronald Fisher of American U. to demand this in a Labor Day 2005 e-mail when most students got financial aid.

3. MR. HASSELL IS ASKED TO EXPLORE ALTERNATIVE AGREEMENT ON ACCESS: J. Slovinec is willing to agree only to attend Summer Institute with definite permission of American U. and Financial Aid. American University is expected to end the barring order on May 17, 2008. If American University still has reservations about visits of J. Slovinec to the campus, American U. is requested to write an alternative access agreement where American University Public Safety would be asked to respect J. Slovinec's access to campus for two definite legally allowed purposes: worker training programs funded by the D.C. Department of Employment Services if J. Slovinec is laid off: court-ordered discovery in this case, Case 06-1143, and perhaps in Case 06-455 since the U.S. Court of Appeals remanded for proceedings in Case 07-7180 when Judge Kessler did not dismiss yet 06-455 yet said an order on summary judgment was appealable. AMERICAN U. SHOULD STATE IF BARRING WAS FOR UNPAID BILL, AND NOT MAKE ADDITIONAL PRETEXTS. Joseph Slovinec is compassionate enough to Mr. Hassell to word this shortly and simply to avoid further confusion after Judge Kessler's confusing maneuvers on Case 06-455 where Mr. Hassell respectfully offered consolidation. J. Slovinec was more trusting of Michael McNair when Mr. McNair only

allowed one summer visit to Lt. Spencer in June 2005 to deliver financial aid documents to Ingrid Valentine. However, the May 2007-May 2008 barring order appeared to exclude J. Slovinec from visiting even if he had legal business like discovery or worker training classes.

4. MR. HASSELL'S EVIDENCE: PORTIONS OF AFFIDAVIT ADMISSIBLE
In his writing of the McNair affidavit, portions are acceptable where McNair claimed he "did not intend to injure reputation": although J. Slovinec disagrees, this is still admissible in court.

5. MR. HASSELL'S EVIDENCE; DISAGREEMENTS ON DISRUPTIVE ACTIVITY CHARGE J. Slovinec still maintains it was defamatory for McNair to claim that J. Slovinec had a "disruptive activity" on campus when federal government sources or surveillance would indicate J. Slovinec placed a phone call on American U. library phone to the office of U.S. Secretary of Education Margaret Spellings whose staff indicated J. Slovinec had the right to file an institutional grievance on lack of financial aid to American University. This institutional grievance included a section which objected to Montgomery County government statements to J. Slovinec that he could not use a homeless shelter in Montgomery County, Maryland after his eviction from Park Bethesda because he was not mentally ill and not a substance abuser. All are informed of a long delay after on August 31, 2007 U.S. District Court Judge Reggie Walton signed an order transferring U.S. District Court Case 07-1655, Slovinec v. Montgomery County, Maryland to U.S. District Court in Maryland: this reinforces that J. Slovinec never recovered from damage from his eviction from American U.'s dorm, Park Bethesda, with lousy job training programs and job placement services for him as a food stamp recipient. This letter distribution caused the behavior charge in Paragraph 6.

6. AMERICAN U. SHOULD DISTINGUISH BETWEEN BARRING FOR UNPAID BILL AND IMPLYING J. SLOVINEC HAS A BEHAVIORAL DISORDER
Michael McNair's affidavit said J. Slovinec had "unpredictable and erratic behavior" and slanderously implied this endangered American U. students: the letter distribution issue was friction with staff and J. Slovinec never had friction with students. After J. Slovinec could not obtain a federal student loan to return to Roosevelt University in Chicago in September 2005, the prevailing weight of evidence indicates J. Slovinec's career was ruined with earnings of zero in 2005, $2700 in 2006, and about $4000 from a part-time phone job in 2007. If American U. was barring J. Slovinec due to an unpaid bill, J. Slovinec would have more respect if American U. stated this was the real reason to the court. The United Methodist Church is reminded that influences of their church and Robert Pastor, a Carter Center employee influenced by Southern Baptists, molded policies which caused J. Slovinec to reside at Community for Creative Nonviolence homeless shelter since August 2005. Mayor Fenty's office will be asked to talk to American U. officials including Public Safety office on a recent scandal when CCNV Executive Director A.C. Nurriddin was reportedly implicated in financial mismanagement: on

September 28, 2007. Mr. Nurriddin told a Human Services Committee hearing with the Chairman, Councilman Tommy Wells, that his chronically homeless residents included large amounts of substance abusers, mentally ill, and veterans. A mistake correction was requested when someone at CCNV implied J. Slovinec should request disability: his doctor's note indicated J. Slovinec only had diagnoses for 3 ailments (all physical): hypertension, rapid heartbeat, and high levels of glucose which are not chronic. When Dr. Pastor and American U. staff signed affidavits for Mr. Khalid which indicated J. Slovinec did not suffer from age discrimination, and seemingly refused to settle EEOC age discrimination case, Dr. Pastor concurred in internal exile for J. Slovinec with keeping him at a homeless shelter like a white minority farmer in Robert Mugabe's Zimbabwe..

7. EXPLOITATION: FISHER DID NOT SERVE PEACE NEEDS OF CHICAGO

J. Slovinec originally brought $8700 from his father's inheritance in Chicago to attend American U. in Jan. 2005 with a tuition bill of $5000: hotel costs were high before he moved into Park Bethesda Feb. 28 and Financial Aid indicated it was easier to get a private loan of $14,000 with their encouragement to pay semester charges. This went to $60 in Sept. 2005 and zero in Jan. 2006. When J. Slovinec was turned down for private loans, American U. Financial Aid office was never clear on why Ingrid Valentine did not respond to J. Slovinec's request for use of Cafritz, Skaskan, and Morgenstern loans in American U. catalog. This is why United Methodist mediators are still asked to explore J. Slovinec's criticisms of American U.'s refusal to answer these interrogatories in U.S. District Court Case 06-455: 12. Ronald Fisher was asked why he sent an insulting Labor Day 2005 e-mail to J. Slovinec which said his registration "has been cancelled" and J. Slovinec had to pressurize a $10,000 payment from an unnamed source to enroll again, when he said I did not have permission to use his name as a job reference, this led to 2 unsuccessful job searches in 2005-2006 and June 2007-March 2008 when I only had 2 job college-level job references from George Mason U. Prof. Susan Nan who taught me during Fisher's semester and Prof. Charmaine Baynes of UDC/Van Ness Food Stamp Employment Training Program. 6. President Clinton signed Welfare Reform Act with Senn High School in Chicago school-to-work training program and less work was done with job advising from Lochlann Boyle, Fisher, and Dean Goodman, 9. Dean Goodman and Dr. Fisher refused to answer question on discrimination in favor of United Nations employees who got tuition remissions and IPCR students who got federal loans when J. Slovinec was expected to pay out of his own pocket. 10. To Dean LeoGrande on no AU involvement in encouraging use of dislocated worker programs for J. Slovinec or ex-students, 11. To Bishop Schol on that it was wrong for AU to pressurize J. Slovinec to reside at CCNV after eviction when there's a shelter at Metropolitan Methodist Church, and 15. Fisher's refusal to grade a paper on Arab League which criticized Bush for invading Iraq in 2003. Fisher is connected to wealthy pro-Bush American and Canadian interests at United Nations and UNITAR (one of his clients) who have motivations to suppress Chicago peace activists who only have churches and a few foreign affairs associations in Chicago.

APPENDIX C MAY 8, 2008

IN CASE 06-1143 –LACK OF SOURCES FOR GRANTS OTHER THAN MISCELLANEOUS FEDERAL GRANTS, MACARTHUR FOUNDATION This is for the American University Community Relations office and Mr. Hassell. In a review of potential sources to pay for the Spring 2005 charges for the American University Graduate Certificate in Peacebuilding classes of Professors Fisher and Nan, there are only two sources with real prospects of paying the bill: a miscellaneous federal grant program including funds to pay bills for poorer people, and the MacArthur Foundation in Chicago which gave a grant to Professor Charles Call, new Director of the Graduate Certificate Program in Peacebuilding. Proper etiquette calls for American University to ask Mac Arthur Foundation for a grant to School of International Service or the International Peace and Conflict Resolution, and with permission of someone like Professor Call I could ask for a portion of Mac Arthur funds to pay about $25,000 for my entire Peacebuilding program. I have less than $500 in the bank and it is a totally hopeless case to pay the bill from my own personal funds.. It is respected that American U. tried to obtain a judgment from Montgomery Judge Vaughey to pay Julie Weber for the housing bill at Park Bethesda in 2005, and he was informed it was unenforceable. Mr. Hassell is asked to talk to American U. legal counsel Hisham Khalid who received J. Slovinec's pleading in Case 06-455 on June 12, 2007 to which American U. never responded: "Letter to Dean Goodman to ask for Statement on if J. Slovinec can complete Graduate Certificate in Peacebuilding program." J. Slovinec disagrees with American U.'s Views since when he was at Park Bethesda during Summer 2005 he filled out application for emergency housing funds for personal support from all these foundations who gave him zero: "J. Slovinec requested money from these foundations: Spencer Foundation in Chicago which said no, and these did not respond to letters: Joyce Foundation in Chicago, Glenner of Skokie, Illinois, AMDC Charitable of Falls Church, Virginia, Clark and Ruby Foundation, Bank of America Plaza in Charlotte, North Carolina, Big Idea of Lombard, Illinois, Agnes Robinson Trust, and Reade Industrial Fund (included personal support for Julie Weber). Financial aid now seems available on Dr. Abu Nimer's website.". Dr. Kerwin reportedly visited Chicago and knows one can ask for donations there. American U. catalog advertised to J. Slovinec in Chicago that American U. had Cafritz, Skaskan, and Morgenstern emergency loans at times for graduate students. Therefore, if Dr. Fisher wanted J. Slovinec to ask a Chicago organization for a grant to pay for Spring 2005 Peacebuilding charges, it was considered more polite for him to ask J. Slovinec in December 2004 before he left Chicago: Dr. Fisher did not do so. Dr. Fisher attempted to demand payment from J. Slovinec's personal funds in a Labor Day 2005 e-mail even after he was told J. Slovinec had only $60 in the bank. Since Dr. Fisher worked at UNITAR with United Nations military officers, J. Slovinec has moral reservations about requesting a grant for payment from the Chicago organizations who are listed with an interest in peacebuilding: the Office of Peace and Justice at the Archdiocese of Chicago, 8th Day Center for Justice, and American Friends Service Committee which supports conscientious objection and could feel bullied with Fisher's request. Illinois Peace Action specializes in nuclear weapons disarmament and Fisher does not. The Chicago Council on Global Affairs has programs, not grants in Fisher's area. J. Slovinec only attended an annual fundraiser dinner for one organization with a peacebuilding program, Catholic Theological Union, who hosted a dinner for Her Majesty Queen Noor of Jordan and J. Slovinec especially wanted to study about interests of her and Clovis Maksoud at the Center for the Global South. Dr. Fisher refused to grade J. Slovinec's paper on the Arab League as a tactic to pressurize him for a bill payment: Fisher did not understand this lessened J. Slovinec's chances of getting a donation from a Chicago or Democratic Party group who wanted evidence that J. Slovinec accomplished something in his American U. classes.